039806/01245/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| JASON RICHEY, | |
| Plaintiff, | |
| v. | Case Number  14-cv-9399 |
| SALEH OBAISI and WEXFORD HEALTH SOURCES, INC., | Judge Matthew F. Kennelly |
| Defendants. | |

## MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGEMNT BY DEFENDANTS, WEXFORD HEALTH SOURCES, INC., AND SALEH OBAISI, M.D.

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC. and SALEH OBAISI, M.D. (deceased)[1] (collectively, the "Defendants"), by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Their Fed. R. Civ. P. 45 Motion for Summary Judgment, state as follows:

### INTRODUCTION

Plaintiff, JASON RICHEY, filed a First Amended Complaint against, WEXFORD HEALTH SOURCES, INC. and its employee, SALEH OBAISI, M.D. (deceased), Stateville's former Medical Director, related to, *inter alia*, a claim that Wexford and Dr. Obaisi acted with constitutional deliberate indifference in treating his chronic back pain - specifically, by not providing him with a back surgery that no specialist has ever recommended.  *See* Defendants' Statement of Undisputed Facts ("SOF"), ¶ 2.  In 2014, Dr. Obaisi requested, and Wexford approved, sending the Plaintiff to a spinal surgeon.  (SOF at ¶ 35).  The spinal surgeon did not

---

[1] Wexford has filed a suggestion of Death on the Record as to Dr. Obaisi.  However, at the time of this Motion's filing, the Plaintiff has not yet substituted in a new party for Dr. Obaisi.

recommend surgery; instead, he recommended consultation with a pain management physician. (SOF at ¶ 35).

From 2014 to 2018, the Plaintiff was sent multiple times to the University of Illinois-Chicago's ("UIC") pain management service where he received multiple epidural injections into his spine, and when those injections failed to relieve his chronic back pain complaints, UIC recommended and Dr. Obaisi and Wexford approved a radiofrequency ablation procedure. (SOF at ¶¶ 41-57). All of this treatment was administered at Dr. Obaisi's request and with Wexford's approval of that request. (SOF at ¶¶ 41-57). It was only in 2018, *after* Dr. Obaisi died, that a UIC physician actually recommend consulting with a spine surgeon for a second opinion on how to treat the Plaintiff's continuing chronic back pain complaints. (SOF at ¶ 57). Wexford promptly approved UIC's spinal surgery request within one (1) week. (SOF at ¶ 58).

This matter is a classic case where an inmate, who lacks any medical education, believes that he is entitled to surgery and is disagreeing with the conservative treatment plan that was recommended for him by a spinal surgeon and multiple pain management physicians and provided to him by Dr. Obaisi and Wexford. The evidentiary record before this Court establishes that Wexford and Dr. Obaisi's conduct did not (and cannot) rise to the level of constitutional deliberate indifference. Accordingly, this Honorable Court should enter an Order granting summary judgment in Wexford and Dr. Obaisi's favor.

## II.  Material Facts

The Defendants incorporate their Statement of Undisputed Facts Pursuant to Local Rule 56.1 and accompanying exhibits, filed concurrently with their Motion for Summary Judgment and supporting Memorandum of Law.

## III. Argument

**A.      Venue and Jurisdiction are Proper**

The Defendants have consented to this Court's jurisdiction and venue by admission in their Answer to Plaintiff's Amended Complaint.  (SOF at ¶ 1).

**B.      Summary Judgment is Proper in this Matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.      Plaintiff Has Not Established the Elements of Deliberate Indifference**

1.      *Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has unequivocally failed to create any issue of material fact to defeat the Wexford Defendants' Motion for Summary Judgment.  In order to prevail on a Section 1983 claim, the Plaintiff must show that Dr. Obaisi acted with deliberate indifference to his serious medical need or condition.  *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).  The burden of proof rests on the Plaintiff.  *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference.  The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the

defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that Dr. Obaisi actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless purposely and deliberately withheld such treatment. *See Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tortious recklessness is not enough. *Id.* Unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to support a claim for deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

2. *The Plaintiff did not suffer from an objectively serious medical condition*

In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991. A serious medical need is an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

As the Seventh Circuit has held, not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (explaining that "minor aches and pains" do not rise to the level of a serious medical condition). Because not every ache and pain invokes a constitutional concern, Seventh Circuit case law has

found it beneficial to look for other objective indicia in order to decide whether an inmate's subjective report of pain rises to the level of an objectively serious medical condition. *See Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (complaints of pain were accompanied by internal bleeding, violent cramps, and periods of unconsciousness); *see also Gutierrez*, 111 F.3d at 1370 (pain complaints were objectively serious when an untreated, infected cyst caused "excruciating pain" accompanied by fever) (emphasis added).

Here, the Plaintiff's reports of pain varied in intensity over time. (SOF at ¶ 64). Moreover, despite claiming that he was in pain, the Plaintiff refused to take his pain medications on seven (7) occasions, as is documented in his medical chart. (SOF at ¶ 65). On more than one occasion, the Plaintiff voluntarily declined to see Dr. Obaisi for a scheduled medical appointment, and instead chose to go to the prison yard for recreation. (SOF at ¶ 47, 50).

Moreover, when the Plaintiff went to the yard, he was hardly standing on the sidelines. Rather, the Plaintiff admitted that despite, allegedly, having severe, debilitating back pain, he was still able to play basketball ball on the prison yard up to two to three (2-3) times *per month*. (SOF at ¶ 66). When he is not able to play basketball in the yard, the Plaintiff participates in games of team handball multiple times per year. (SOF at ¶ 67). To the degree that he is experiencing pain, there is no evidence that his chronic back pain is the sort of severe, debilitating pain that invokes a constitutional concern.

3.    *Dr. Obaisi lacked subjective notice of an excessive risk to the Plaintiff's health*

Dr. Obaisi lacked subjective notice of an excessive risk to the Plaintiff's health. The second element of a deliberate indifference claim – subjective notice – requires that "[a] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016). For the Plaintiff's claim to succeed,

he must establish that Dr. Obaisi knew that the treatment being offered to the Plaintiff was ineffective; and yet, continued pursuing that course of treatment. *See Petties*, 836 F.3d at 728.

Here, Dr. Obaisi is a board-certified general surgeon. (SOF at ¶ 4). He reviewed multiple MRI's of the Plaintiff's back that showed no neural compression of the spine. (SOF at ¶ 40, 53). He also reviewed reports where the Plaintiff reported to other medical providers that the epidural injections reduced his pain complaints by almost fifty percent (50%). (SOF at ¶ 55) (Plaintiff's report that his pain level dropped from "9/10" to "5/10" following the medical branch block). Finally, as Dr. Obaisi explained, the pain management physicians at UIC are capable of making a referral to another medical service - such as spinal surgery - if consultation or a second opinion on the course of treatment is needed. (SOF at ¶ 70). Thus, if one of UIC's pain management physicians thought that a different course of treatment or a second opinion was indicated for this patient, they would have recommended it, as they did in January 2018, after Dr. Obaisi passed away. (SOF at ¶ 71, 59). However, at no point in Dr. Obaisi's life, did UIC's pain management service give Dr. Obaisi any indication that the Plaintiff required anything other than the treatment modalities that he was currently being offered for his chronic back pain by UIC's pain management service (namely, epidural injections every few months). Simply, nothing in the record suggests that Dr. Obaisi knew about a substantial risk of harm to the Plaintiff and then disregarded that substantial risk. Thus, Plaintiff cannot prove subjective notice.

   4.   *Dr. Obaisi did not display the required culpability because his actions in treating the Plaintiff complied with the applicable standard of care*

The Plaintiff's deliberate indifference claim against Dr. Obaisi also fails because the undisputed facts show that Dr. Obaisi complied with all applicable community standards of medical care in treating the Plaintiff. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged

need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for the serious claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). The Eighth Amendment does not entitle an inmate to demand specific care or the best care possible. *Forbes*, 112 F. 3d at 267.

With respect to the culpable state of mind requirement, gross negligence is not enough; the conduct must be reckless in the criminal sense. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties,* 836 F.3d at 728.

Initially, this case represents a classic dispute about medical judgment. The Plaintiff alleges that Dr. Obaisi failed to "provide competent and professional medical treatment". (SOF at ¶ 1). As noted, Dr. Obaisi secured the Plaintiff three (3) MRIs; a consultation with a spinal surgeon at Midland Orthopedic Associates; three (3) years of epidural injections under the direction of UIC's pain management physicians; and a radiofrequency nerve ablation procedure. (SOF at ¶¶ 27-55). There can be no dispute that the Plaintiff has received *some* treatment for his

back, he just believes that it is the wrong treatment, and he needs surgery. However, a prisoner's disagreement with the doctor's medical judgment does not amount to deliberate indifference. *Berry,* 604 F.3d at 441; *Forbes,* 112 F.3d at 267.

Second, the Plaintiff can only prevail on his culpability showing if he can demonstrate to the Court that no other "minimally competent medical professional would have responded under these circumstances." *Sain,* 512 F.3d at 894-95. Here, Dr. Obaisi can point to not only his judgment, but that of the Midland Orthopedic Associates spinal surgeon and the multiple UIC pain management physicians who saw the Plaintiff from 2014 to 2018 for his back pain that surgery, and, frankly, even surgical consultation was not indicated for this Plaintiff. (SOF at ¶¶ 27-55). After all, the medical specialists at UIC were the individuals who recommended conservative treatment from 2014 to 2018 rather than surgical consultation. (SOF at ¶¶ 27-55). Dr. Obaisi's treatment of the Plaintiff's chronic back pain followed the specialist's recommendations for conservative treatment. (SOF at ¶¶ 27-55). Dr. Obaisi prevails in this case if he can point to just one physician who supports his treatment - here, he can point to over half a dozen instances where other physicians felt that conservative treatment was not only adequate, but appropriate.

Third, acting as the Plaintiff's primary care physician, Dr. Obaisi testified that he reasonably relied on the recommendations of the medical specialists at UIC and Midland Orthopedics that conservative treatment was recommended for the Plaintiff. (SOF at ¶ 40, 70-71). Thus, in order to show that Dr. Obaisi's treatment was inadequate, Plaintiff must actually go one step further in this case and demonstrate to the Court that the UIC and Midland Orthopedic physicians' treatment recommendations were so blatantly inadequate that no reasonable primary care physician could have followed those recommendations. After all, if the UIC and Midland

Orthopedic physicians' recommendations were reasonable, then Dr. Obaisi cannot have violated the Plaintiff's civil rights by executing a reasonable treatment plan recommended to him by multiple medical specialists. This case is nearly four (4) years old, and the Plaintiff simply has no evidence, whatsoever, suggesting that UIC and Midland Orthopedics' conservative treatment recommendations were unreasonable.

Finally, the fact that the conservative treatment recommended by the medical specialists has still not resolved the Plaintiff's back pain complaints, and the Plaintiff is now being sent to a spinal surgeon for a second opinion on how to treat his chronic back pain, does not demonstrate culpability on Dr. Obaisi's part. So long as Dr. Obaisi responded reasonably to the risk, he is not culpable, even if the treatment was not ultimately successful. *See Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010) (finding that a prison official is "free from liability if he responded reasonably to the risk even if the harm ultimately was not averted."); *see also High v. Oberhelman,* No, 97 C 0184, 2000 U.S. Dist. LEXIS 7117, * 28, 2000 WL 705994 (N.D. Ill. May 19, 2000) ("Although Plaintiff is dissatisfied with the caliber and efficacy of his care, Defendant's failure to improve Plaintiff's recurring symptoms, despite his best efforts, did not violate the Constitution"); *Varnado*, 920 F.2d at 321 (finding that unsuccessful medical treatment and medical malpractice are not sufficient to establish the required culpability to support a deliberate indifference claim).

Plaintiff cannot meet his burden of proving that Dr. Obaisi acted with culpability in his treatment of the Plaintiff. Instead, the evidence confirms that Dr. Obaisi acted appropriately. Therefore, the Plaintiff's claim fails.

5. *No expert or verifying medical testimony established a causal connection between Dr. Obaisi's alleged deliberate indifference and Plaintiff's alleged damages*

The Plaintiff produced no verifying medical testimony establishing his claims that Dr. Obaisi's, alleged, inadequate or delayed medical treatment detrimentally caused him harm. Succinctly, Plaintiff's claim boils down to a claim that Dr. Obaisi either provided inadequate treatment, or that recommending conservative treatment from 2014 to 2018 in lieu of a surgical consultation led to delayed treatment that caused harm.

Here, the Plaintiff has no verifying medical evidence supporting his delayed treatment claim. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *Padilla v. Bailey*, No. 09-C-8068, 2011 U.S. Dist. LEXIS 80945, * 17-18, 2011 WL 3045991 (N.D. Ill. July 25, 2011) ("[B]ecause [the plaintiff] did not introduce verifying medical evidence that shows his condition worsened because of the delay, his deliberate indifference claim fails) (internal quotations omitted); *Smith v. Wexford Health Sources, Inc.*, No. 15-C-3730, 2017 U.S. Dist. LEXIS 187760, *13-14, 2017 WL 5464367 (N.D. Ill. Nov. 14, 2017) (finding for a Wexford medical provider when the inmate failed to produce verifying evidence of the detrimental effect of any alleged delay in treatment caused by that provider).

Nor does the Plaintiff have any verifying evidence beyond his own self-serving lay opinion supporting his inadequate treatment claim. Without verifying medical evidence, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 F. App'x. 625, 628 (7th Cir. 2002); *see also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have

such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately).

Instead of offering this Court verifying medical evidence, the Plaintiff has only his own, self-serving, lay opinion. *See e.g., High,* 2000 U.S. Dist. LEXIS 7117 at * 31 ("[L]acking medical expertise, neither the court nor Plaintiff can second-guess the judgment of a trained medical professional that… conservative treatment was appropriate.")  Therefore, his claim must fail.

**D.    The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.**

The Plaintiff has failed to prove his claim against Wexford Health Sources, Inc.  First, he has improperly sued Wexford under *respondeat superior* liability rather than *Monell* liability. Second, even if Plaintiff had pled a *Monell* claim against Wexford, he lacks any evidence of an unconstitutional policy or widespread practice to support *Monell* liability against Wexford. Finally, even if he met all elements of a *Monell* claim, the Plaintiff's *Monell* claim would still fail against Wexford because he cannot prove underlying deliberate indifference against Dr. Obaisi.

1.    *The Plaintiff has sued Wexford, impermissibly, under* respondeat superior *liability*

The Plaintiff cannot sue Wexford based on the actions of its employees.  The doctrine of *respondeat superior* liability does not apply to actions filed under 42 U.S.C. § 1983, including against private corporations like Wexford.  *Pacelli v. Devito*, 972 F.2d 871, 877 (7th Cir. 1992); *see also Iskander v. Forest Park*, 690 F.2d 126, 127 (7th Cir. 1982).

Plaintiff's Amended Complaint raises a single count, jointly, against Wexford and Dr. Obaisi.  (SOF at ¶ 2).  Nowhere in that Count does the Plaintiff expressly mention *Monell* liability.  (SOF at ¶ 2).  Nor does the Plaintiff's Amended Complaint use any of the key words typically associated with a *Monell* claim such as "policy" or "widespread practice".  (SOF at ¶ 2).

However, the count does contain phrases typically associated with *respondeat superior* liability. *See* (SOF at ¶ 2) ("SALEH OBAISI, individually and <u>as agent</u> of WEXFORD HEALTH SOURCES, INC." ) (emphasis added). Under any plain reading of Plaintiff's Amended Complaint, the Plaintiff has clearly sued Wexford under *respondeat superior* liability rather than *Monell* liability. The case law is clear that Wexford cannot be held liable for its employees' alleged constitutional torts. *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014).

Even if Plaintiff could sue Wexford vicariously for its employees' torts (which he cannot), Wexford's alleged agent, Dr. Obaisi, could assert qualified immunity to defeat those claims. *See Filarsky v. Delia,* 566 U.S. 377, 390 (2012).[2] Without a viable claim against the agent, a plaintiff's *respondeat superior* claim against the principal fails. *Shelton v. Schneider,* 05-C-5955, 2006 U.S. Dist. LEXIS 1237, * 24-25, 2006 WL 59364 (N.D. Ill. Jan. 4, 2006).

2.    *Even if Plaintiff had pled* Monell *liability against Wexford, he still has not identified an unconstitutional policy or widespread practice of Wexford that caused him harm*

Even if the Plaintiff had pled *Monell* liability against Wexford, which he did not, the Plaintiff has still failed to identify any unconstitutional policy or widespread practice by Wexford that caused him harm. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In order to recover against a corporate defendant under § 1983, a plaintiff must make two showings. First, the Plaintiff must show that

---

[2] While the Seventh Circuit, in *Petties v. Carter*, questioned whether Wexford medical providers can assert qualified immunity, a Tenth Circuit case decided after *Petties* followed the Supreme Court's *Filarsky* decision, which the Defendants contend remains controlling in this Circuit, and awarded qualified immunity to a private doctor working in a state-owned prison. *Compare Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016) *with Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* - he was a private party hired to do a job for which a permanent government employee would have received qualified immunity.")

an unconstitutional policy or widespread practice exists, and second, the Plaintiff must show that deliberate indifference occurred because of that unconstitutional policy or widespread practice. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

First, the Plaintiff has not produced or cited to a single Wexford policy from which he can claim that Wexford maintains an unconstitutional policy. Absent clear evidence of an unconstitutional policy, the Court should not take the Plaintiff's word and assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford maintained an unconstitutional policy or widespread practice, but could produce no evidence of either. 615 F. App'x. 378, 379 (7th Cir. 2015). The Plaintiff has no evidence of an unconstitutional policy. Thus, he cannot make his required showing to proceed on an unconstitutional "policy" theory.

Second, the Plaintiff has produced no evidence of how other inmates were treated in order to support a "widespread practice" showing. In order to claim a "widespread practice", a prisoner needs evidence of how other inmates were treated in order to show that his treatment was not a "random event" but truly the result of a corporate policy. *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008). Conclusory, factually unsupported allegations about the experience of other inmates are not a sufficient basis to prove *Monell* liability against Wexford. *Haywood v. Wexford Health Sources, Inc.,* 16-cv-3566, 2017 U.S. Dist. LEXIS 28416, * 11 (N.D. Ill. Mar. 1, 2017). Here, the Plaintiff has no evidence of how other inmates were treated. Thus, he cannot make his required showing to proceed on an unconstitutional "widespread practice" theory.

Finally, it bears noting that even if the Plaintiff had met his threshold burden of proof in establishing an unconstitutional policy or widespread practice of Wexford, he still fails the

second hurdle of his *Monell* claim - that deliberate indifference actually occurred because of that policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. In order to meet the second prong of a *Monell* claim, the Plaintiff must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010).

Here, Dr. Obaisi testified that he does not treat any of his patients, including, this Plaintiff, according to any Wexford written policy; rather, he provides medical treatment that is needed, just as he did with his patient's in private practice before joining Wexford. (SOF at ¶ 13, 16). Thus, even if Plaintiff could direct this Court to Wexford policy or widespread practice to criticize, it could not have been the moving force behind any of Dr. Obaisi's treatment of the Plaintiff's chronic back pain.

Ultimately, Plaintiff cannot meet his first hurdle in proving a *Monell* claim - that an unconstitutional policy or widespread practice exists. Therefore, this Court should grant summary judgment in Wexford's favor.

3.   Finally, even if the Plaintiff pled a *Monell* claim, his claim still fails because he cannot prove underlying deliberate indifference against Dr. Obaisi

Finally, even if the Plaintiff actually pled a *Monell* claim - which he did not - Plaintiff's claim against Wexford would still fail because he cannot establish underlying deliberate indifference against the individual defendant, Dr. Obaisi, for the reasons stated above. *See Pyles v. Fahim,* 771 F.3d 403, 412 (7th Cir. 2014) (holding that Wexford was not liable for damages because there was no underlying constitutional violation); *Smith*, 2017 U.S. Dist. LEXIS 187760 at * 21 (noting that one additional basis for denying a *Monell* claim against Wexford would have been the "lack of deliberate indifference by the individual defendants").

### E.     The Plaintiff's claim for punitive damages fails

Finally, the Plaintiff claims punitive damages; however, he has not proven any set of facts that would allow him to recover punitive damages.  Punitive damages may be awarded under 42 U.S.C. § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011).   Dr. Obaisi testified that he never intended to cause the Plaintiff any harm, and that he only desired the best possible medical outcome for the Plaintiff.  (SOF at ¶ 68-69).

Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment on this issue.

**CONCLUSION**

This Court should grant summary judgment in the Defendants' favor.  The Plaintiff's claim boils down to his unfounded belief that he needed surgery to fix his chronic back pain. The evidence has established, undisputedly, that this Plaintiff has received frequent treatment at multiple medical specialists for years.  Those specialists, including one spinal surgeon and multiple pain management physicians, recommended only conservative treatment from 2014 to 2018, and did not recommend further consultation with a spinal surgeon until *after* Dr. Obaisi died.   Absent some verifying medical evidence that Dr. Obaisi was wrong to follow the recommendations of multiple medical specialists, this case represents nothing more than a dispute between an inmate and doctor about medical treatment.  The case law is well-settled that an inmate's disagreement with his prison medical provider about his medical treatment is not an

Eighth Amendment concern. No reasonable jury can hear this evidence and find that Dr. Obaisi and Wexford's medical care of this Plaintiff constituted cruel and unusual punishment.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC. and SALEH OBAISI, M.D. (deceased), pray that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs, and for any other relief deemed just.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC. and
SALEH OBAISI, M.D. (deceased)

By:  /s/ James F. Maruna
     Matthew H. Weller / ARDC No. 6278685
     James F. Maruna / ARDC No. 6313433
     CASSIDAY SCHADE, LLP
     20 N. Wacker Drive, Suite 1000
     Chicago, IL 60606
     (312) 641-3100
     (312) 444-1669 - Fax
     mweller@cassiday.com
     jmaruna@cassiday.com

     *Counsel for Defendants, Wexford Health*
     *Sources, Inc. and Saleh Obaisi, M.D.*
     *(deceased)*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2018 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8887809 JMARUNA