**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON RICHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14 C 9399** |
| | ) | |
| **GHALIAH OBAISI, independent** | ) | |
| **executor of the Estate of Saleh** | ) | |
| **Obaisi, M.D., and WEXFORD** | ) | |
| **HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNBLLY, District Judge:

Jason Richey, who is incarcerated at Stateville Correctional Center, has sued Stateville's former medical director Dr. Saleh Obaisi[1] and his employer Wexford Health Sources, Inc., which contracts with the Illinois Department of Corrections to provide medical care to IDOC inmates. Richey alleges that Dr. Obaisi disregarded his repeated complaints of severe and chronic back pain and failed to properly treat him for the pain and underlying back condition. The Court recruited counsel, Zane Smith and Boris Samovalov of Zane D. Smith & Associates, Ltd. (and, formerly, Andre Ordeanu of that firm) to represent Richey and thanks them for their diligent efforts on his behalf.

Obaisi and Wexford have moved for summary judgment. For the reasons stated below, the Court grants the motion.

---

[1] Dr. Obaisi passed away in 2017, and the administrator of his estate has been substituted in his place as a defendant.

**Facts**

Because defendants have moved for summary judgment, the Court views the record in the light most favorable to Richey and draws reasonable inferences in his favor. *See, e.g., Dunn v. Menard, Inc.*, 880 F.3d 889, 905 (7th Cir. 2018).

Richey says that he injured his back in July 2010 while lifting weights. He was immediately taken for medical treatment. He reinjured his back in October 2011, again while lifting weights.

Dr. Obaisi first examined Richey for a complaint of back pain in December 2012. Richey reported that he had been experiencing back pain for about a year. Dr. Obaisi prescribed a pain medication called Mobic, a non-steroidal anti-inflammatory drug. He also referred Richey for on-site physical therapy, which Richey says did no good. In or about April 2013, after Richey had repeatedly requested a back brace, Dr. Obaisi ordered an abdominal girdle—not a brace—but it did not help and in fact caused Richey more pain, so he stopped wearing it after a couple weeks. Richey says that even after he told Dr. Obaisi this, he did not order a back brace for Richey.

Richey saw Dr. Obaisi again in July 2013. Dr. Obaisi's records reflect that Richey reported chronic lower back pain with radiculopathy, in other words the pain was radiating into his legs. He also reported that the pain medication was not helping to alleviate his symptoms. Dr. Obaisi approved a lower bunk and lower gallery permit for Richey. Later in July, Wexford approved sending Richey offsite for an MRI study of his back.

An MRI performed on Richey about three months later, in October 2013, showed a bulging disc at L3-L4 causing mild bilateral foraminal narrowing; a disc bulge and right

foraminal protrusion at L4-L5 causing moderate right foraminal narrowing; and right foraminal protrusion at L5-S1 causing mild to moderate foraminal narrowing. A reasonable fact finder could find that this tended to confirm Richey's accounts of back pain radiating into his legs.

Dr. Obaisi saw Richey again in January 2014 and reviewed the MRI results with him. He again prescribed Mobic for Richey's pain. In early February 2014, Richey was approved for an orthopedic consultation. In early April 2014, Richey was taken offsite to see Dr. Robert Strugala at Midwest Orthopedics Associates. Dr. Strugala assessed Richey as having chronic low back pain and degenerative disc disease. He recommended a consultation with a pain management specialist. Dr. Strugala did not recommend surgery, epidural injections, or any other enhanced treatment. Richey began a second round of physical therapy in April 2014, which did not result in any improvement.

Dr. Obaisi saw Richey again in mid-April 2014. Around that time, Dr. Obaisi again approved, for a one-year period, a lower bunk, lower gallery permit for Richey so that he would not have to climb stairs or a bunk bed regularly, and also approved use of a waist chain, a form of restraint that evidently puts less strain on one's back. At the mid-April consultation, Dr. Obaisi reviewed Dr. Strugala's findings and put in for a "collegial review discussion," a process used by Wexford to consider specialized offsite testing or treatment. This took place in the latter part of April 2014. Richey was approved for a consultation with the pain clinic at University of Illinois-Chicago Medical Center. The consultation, however, did not take place until late December 2014. In the interim, UIC requested an updated MRI, and this was done in October 2014. That MRI

showed degeneration of the lumbar spine but no neural compression.

Richey filed the present lawsuit in November 2014, not too long his before his first visit to the UIC pain clinic. The Court appointed counsel in December 2014, but the first two attorneys appointed were given leave to withdraw. Richey's current counsel was appointed in late January 2015 and first appeared in the case in mid-February 2015.

Richey's first visit to the UIC pain clinic took place in late December 2014. Following the visit, the clinic indicated that Richey might have an injury to his sacroiliac joint with inflammation or an injury to his lateral femoral cutaneous nerve with inflammation. The clinic recommended a left sacroiliac joint x-ray before Richey's next visit. In early January 2015, x-rays of Richey's left hip and sacral spine were performed, with no findings of injury.

Dr. Richey testified that once an inmate goes to a UIC specialist, that specialist begins directing the inmate's treatment, and he does his best to accommodate the specialist's recommendations. Richey returned to the UIC pain management clinic in April 2015. UIC advised that it wanted to start nerve block injections with the goal of relieving Richey's inflammation and thus his pain. Richey was sent back to the clinic in mid-May 2015 and was given an injection of corticosteroids at the L4-L5 joint. He says that the injection did not relieve his pain. In June 2015, Richey was scheduled to see Dr. Obaisi, but medical staff did not provide him with the necessary pass, so he missed the appointment. There is no evidence to suggest that this was Dr. Obaisi's fault. In October 2015, Richey returned to the UIC clinic and was given a steroid injection at the left sacroiliac joint. He reported after this that it reduced his pain by 60 to 70 percent,

but the relief was only temporary.

Richey returned to UIC in late May 2016 and was given another left sacroiliac steroid injection. Again, he experienced pain relief only for a short period. Richey's next appointment with Dr. Obaisi was scheduled for the end of May, but he missed it for reasons that are disputed. Richey was put on a list for further physical therapy in or about early October 2016. He next returned to the UIC pain clinic in mid-October 2016, with complaints of ongoing pain. UIC recommended a repeat left sacroiliac injection and suggested consideration of a "radiofrequency nerve ablation" procedure. Nerve ablation is a procedure involving use of an electrical current produced by radio waves to heat up and, effectively, deaden an area of nerve tissue, with the goal of decreasing transmission of pain signals from that area. Richey received a steroid injection at the UIC clinic in early November 2016.

In June 2017, another MRI of Richey's lower spine was done, again resulting in a finding of degenerative changes but no neural compression. Richey want back to the pain clinic in late June 2017, and a nerve ablation procedure was recommended. This procedure—involving the L4-S1 medial branch—was done in early August 2017. Richey reported that his pain dropped from a level of 9 on a 1-10 scale to a level of 5.

Dr. Obaisi passed away in December 2017. In late January 2018, Richey was sent back to the UIC pain management clinic for an evaluation following the nerve ablation procedure. Richey reported that he had no ongoing pain relief. The clinic recommended a surgical consultation and continuation of all medications, as well as physical therapy. In late January 2018, following a Wexford collegial review discussion, Richey was approved for an offsite surgical consultation as well as follow-up

consultation at the UIC pain clinic.  This was the first time that the UIC clinic had recommended a surgical consultation (the 2014 consultation was done at Dr. Obaisi's request and, as noted earlier, had resulted in a recommendation for a pain management referral, not surgery).

Richey contends that Dr. Obaisi unreasonably delayed treatment for his back pain.  Specifically, he contends that

> After his injury of July 12, 2010 and until about October 17, 2013, Plaintiff was not referred to any specialists and was merely given pain medications, such as Ibuprofen, Mobic, and Flexeril, despite his repeated requests for an MRI.

Pl.'s Stat. of Add'l Facts ¶ 2.  In addition, Richey contends that Dr. Obaisi refused or failed to follow recommendations by the UIC specialists in certain respects.  In particular, Richey reports that although the UIC clinic recommended that he avoid stairs, Dr. Obaisi refused to approve, and/or delayed, Richey's repeated requests for a lower-tier permit and then in 2015, after further complaints, backdated a lower-bunk, lower-tier permit after Richey complained or filed a grievance.  *Id.* ¶ 12.  Richey also contends that Dr. Obaisi disregarded a recommendation from the UIC clinic that prison guards use a waist chain to restrain Richey while transporting him rather than a "black box" handcuffing device—which evidently risks changing one's posture and thus exacerbating back pain.  Specifically, Richey contends that Dr. Obaisi did not renew a previously-issued waist chain permit in 2015.  *Id.* ¶¶ 10-11.  More generally, Richey states the following:

> [W]ithout any logical explanation [Dr. Obaisi] refused to give plaintiff permits for a back brace, refused to give Plaintiff [a] permit for waist chain, refused to give Plaintiff [a] permit for no stairs, and prolonged the "conservative" stage of his treatment without recommending any intervention for a period of about four years.

Pl.'s Resp. to Defs.' Stat. of Facts ¶ 68; *see also* Pl.'s Stat. of Add'l Facts ¶ 10 (refusal of waist chain permit), ¶ 12 (refusal of no-stairs permit).

## Discussion

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dunn v. Menard, Inc.*, 880 F.3d 889, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*

To prevail on an Eighth Amendment claim in the present context, the plaintiff must show that he suffered from an objectively serious medical condition, the defendants were deliberately indifferent to that condition, and their indifference caused some injury. *Petties v. Carter*, 836 F.3d 772, 727-28 (7th Cir. 2016); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton*, 593 F.3d at 620 (internal quotation marks omitted). A serious medical condition includes a condition that results in "unnecessary and wanton infliction of pain if not treated." *Id.*

Defendants' attempts to minimize Richey's condition are unavailing as a basis for summary judgment. Contrary to defendants' contention, a reasonable jury could

7

conclude that the pain caused by the condition of his lumbar spine was objectively serious and required medical treatment. The evidence supporting this includes Richey's own testimony; the findings of the MRIs showing degenerative disk disease and narrowing of the paths through which nerves pass; Dr. Strugala's testimony and the records from the UIC pain clinic; and Dr. Obaisi's own repeated prescription of pain medication for Richey. *See, e.g., Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) ("The fact that he was prescribed such drugs is evidence that he really did have back pain."). The fact that the pain was not completely debilitating does not defeat Richey's claim; that is not required in order to trigger the protection of the Eighth Amendment.

The same evidence just discussed would permit a reasonable jury to find that Dr. Obaisi was aware of Richey's ongoing pain and was also aware that at least some of the treatment that Richey was given did not work or did not work all that well. Richey reported his pain and other symptoms directly to Dr. Obaisi. Dr. Obaisi, in turn, quite obviously credited Richey's complaints enough to prescribe him pain mediation and also to recommend outside treatment, including a surgical consultation in 2014, referral to the UIC pain clinic, injections of pain medication, and the nerve ablation procedure.

The key question for purposes of defendants' summary judgment motion is whether a reasonable jury could find that Dr. Obaisi's actions or inaction in treating Richey's back pain amounted to deliberate indifference. Determining whether a prison official was deliberately indifferent to an inmate's serious medical needs requires examining "the totality of an inmate's medical care." *Petties*, 836 F.3d at 728. "[A] prison official's decision to ignore a request for medical assistance" can suffice "to show

deliberate indifference." *Id.* at 729.  A plaintiff may also show deliberate indifference by pointing to evidence that a physician's treatment decisions were "so far afield of accepted professional standards as to raise the inference that [they were] not actually based on medical judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Determination of deliberate indifference requires an inquiry into the prison official's subjective state of mind.  A plaintiff is not required to show that the official intended harm or believed harm would occur, but mere negligence is insufficient. *Petties*, 836 F.3d at 728.  "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.*  Rather, the plaintiff must establish that the official actually knew or and disregarded a substantial risk of harm.  *Id.*

No reasonable juror looking at the entire course of treatment that Dr. Obaisi provided for Richey's back pain could conclude that he disregarded the problem or Richey's legitimate complaints about it.  Dr. Obaisi arranged for Richey to be sent out for a surgical consultation in April 2014; the surgeon did not recommend surgery.  Dr. Obaisi arranged for MRI studies on three separate occasions; no surgeon or other specialist determined based on these studies that surgery was required or appropriate. When the UIC pain specialists recommended injections of pain medication, Dr. Obaisi arranged for this.  When an injection at one spot did not work, a further MRI study was done, and an injection at another spot was tried.  When several attempts at pain medication injections proved unsuccessful in diminishing Richey's pain, Dr. Obaisi obtained and followed the pain specialists' recommendation for the nerve ablation procedure.  And when that did not work, Richey was approved for a further surgical

consult.

No reasonable jury could find that Dr. Obaisi was deliberately indifferent to Richey's medical needs.  The events just described, even taken in the light most favorable to Richey, do not support a finding that Dr. Obaisi departed from the standard of care or provided anything less than acceptable treatment.  Rather, the evidence reflects that Dr. Obaisi followed, and approved, a completely standard course of treatment for a patient reporting chronic lower back pain:  conservative therapy (pain medication, physical therapy, etc.), followed by imaging studies, followed by more intrusive therapy short of surgery (pain injections), followed by further studies, followed by even more intrusive therapy (the nerve ablation procedure), with surgery considered only as a last resort.  Richey has offered no evidence that would permit a reasonable jury to find that Dr. Obaisi should have departed from the recommendations of the specialists and referred him for surgery or other invasive procedures at an earlier date.

To be sure, it is likely that the course and progression of treatment for Richey's back condition proceeded more slowly than if he had not been imprisoned.  The deliberate indifference standard, however, does not impose liability simply because the care of an imprisoned person does not follow the same course, or the same pace, of the care of a non-imprisoned person.  Richey cites no case holding otherwise.

The Court also notes that there is a decent chance that the course of Richey's treatment has been affected—in a positive way—by the fact that he filed suit, counsel was appointed and then pursued the case and agitated for further treatment, counsel for Dr. Obaisi and Wexford monitored the case closely, and the Court held periodic status hearings at which it made specific inquiries about Richey's treatment and the anticipated

next steps.  But the precise motivation for why Richey *did* get the consultation and treatment that he ultimately received or is scheduled for is of no consequence.  The question is whether Dr. Obaisi was deliberately indifferent to Richey's medical needs, not whether he got more and better attention once a spotlight was trained onto his case.[2]

One circumstance that may suffice to show deliberate indifference is "a prison official's decision to ignore a request for medical assistance."  *Id.* at 729.  Looking at the course of Richey's treatment as a whole, nothing of the kind took place here; no reasonable jury could so find.  In an ideal world, the MRI studies, the outside consultations, and the follow-up work would have taken place at a faster pace.  But this does not mean that Dr. Obaisi ignored Richey's requests for treatment; no reasonable jury could find that he did.

The one area in which a reasonable jury might find that Dr. Obaisi's treatment deviated from acceptable standards involves his apparent failure, on certain occasions, to follow the pain clinic specialists' recommendations regarding placement of Richey on a lower tier to avoid repeated climbing of stairs, as well as their recommendation regarding the use of a waist chain as a restraint rather than a black box cuffing device.  As the Seventh Circuit has stated, one indication that may point toward a determination of deliberate indifference is "when a doctor refuses to take instructions from a specialist."  *Petties*, 836 F.3d at 729 (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999)).  But on these points,

---

[2] If the anticipated surgical consultation results in a recommendation for surgery and Stateville medical staff or Wexford fail to carry it out, Richey will then have at least an arguable basis for a new lawsuit.

Richey offers no evidence—medical or otherwise—that Dr. Obaisi's actions in this regard exacerbated his condition, prolonged his pain, or gave rise to unnecessary infliction of pain. Without such evidence, the required element of causation is lacking.

For these reasons, defendants are entitled to summary judgment on Richey's Eighth Amendment claim against Dr. Obaisi. Finally, because Richey can show no underlying constitutional violation, he cannot sustain a claim against Wexford premised on the claimed existence of a policy that caused a constitutional wrong. *See, e.g., Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018).

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. no. 91] and directs the Clerk to enter judgment in favor of defendants and against plaintiff. The trial date of December 10, 2018 and the final pretrial conference date of December 6, 2018 are vacated.

Date: November 2, 2018

_____
MATTHEW F. KENNELLY
United States District Judge